LAW OFFICES
# BRODSKY & SMITH, LLC

9595 WILSHIRE BLVD., SUITE 900
BEVERLY HILLS, CA 90212

877.534.2590
FAX 310.247.0160
www.brodskysmith.com

| NEW JERSEY OFFICE | NEW YORK OFFICE | PENNSYLVANIA OFFICE |
|---|---|---|
| 1310 N. KINGS HIGHWAY | 240 MINEOLA BOULEVARD | TWO BALA PLAZA, STE 510 |
| CHERRY HILL, NJ 08034. | MINEOLA, NY 11501 | BALA CYNWYD, PA 19004 |
| 856.795.7250 | 516.741.4977 | 610.667.6200 |

March 16, 2020

| | |
|---|---|
| Fibre Resources<br>Attn: Nate Grochmal, General Manager<br>3833 Bancroft Drive<br>Spring Valley, CA 91977 | Fibre Resources Unlimited, Inc.<br>Attn: General Counsel<br>555 S Rose Street<br>Anaheim, CA 92805 |
| Fibre Resources<br>Attn: Justin Dalton, Owner<br>3833 Bancroft Drive<br>Spring Valley, CA 91977 | Certified Recycling, Inc.<br>Attn: General Counsel<br>555 S Rose Street<br>Anaheim, CA 92805 |
| Administrator<br>U.S. Environmental Protection Agency<br>Mail Code: 1101A<br>1200 Pennsylvania Avenue, N.W.<br>Washington, DC 20460 | Executive Officer<br>Regional Water Quality Control Board<br>San Diego Region<br>2375 Northside Drive, Suite 100<br>San Diego, CA 92108 |
| Regional Administrator<br>U.S. EPA, Region 9<br>75 Hawthorne Street<br>San Francisco, CA 94105 | Executive Director<br>State Water Resources Control Board<br>1001 I Street<br>Sacramento, CA 95814 |

Re:   Notice of Violation and Intent to File Suit under the Clean Water Act

To Whom It May Concern:

Brodsky & Smith, LLC ("Brodsky Smith") represents Clayton Stefan Freeman ("Freeman") a citizen of the State of California. This letter is to give notice that Brodsky Smith, on Freeman's behalf, intends to file a civil action against Fibre Resources Unlimited, Inc. a/k/a Fibre Resources and Certified Recycling, Inc. (collectively "Fibre Resources") for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA") at Fibre Resources' facility located at 3833 Bancroft Drive, Spring Valley, CA 91977 (the "Facility").

Freeman is a citizen of the State of California who is concerned with the environmental health the Sweetwater River, and uses and enjoys the waters of the Sweetwater River, its inflows, outflows, including the San Diego Bay, and other areas of the overall Sweetwater River Watershed, of which the Sweetwater River is a part. Freeman's use and enjoyment of these waters are negatively affected by the pollution caused by Fibre Resources' operations. Additionally, Freeman acts in the interest of the general public to prevent pollution in these waterways, for the benefit of their ecosystems, and for the benefits of all individuals and communities who use these waterways for various recreational, educational, and spiritual purposes.

1

This letter addresses Fibre Resources' unlawful discharge of pollutants from the Facility via indirect flow into the Sweetwater River and the overall Sweetwater River Watershed.[1] Specifically, investigation of the Facility has uncovered significant, ongoing, and continuous violations of the CWA and the National Pollutant Discharge Elimination System ("NPDES") General Permit No CAS000001 [State Water Resources Control Board] Water Quality Orders No. 2014-0057-DWQ (the "Industrial Stormwater Permit" or the "IGP") and 92-12-DWQ (as amended by Order No. 97-03-DWQ) (the "Previous Industrial Stormwater Permit").[2]

CWA section 505(b) requires that sixty (60) days prior to the initiation of a civil action under CWA section 505(a), a citizen must give notice of his or her intent to file suit. 33 U.S.C. § 1365(b). Notice must be given to the alleged violator, the U.S. Environmental Protection Agency ("EPA"), and the State in which the violations occur. As required by section 505(b), this Notice of Violation and Intent to File Suit provides notice to Fibre Resources of the violations that have occurred and which continue to occur at the Facility. After the expiration of sixty (60) days from the date of this Notice of Violation and the Intent to File Suit, Freeman intends to file suit in federal court against Fibre Resources under CWA section 505(a) for the violations described more fully below.

During the 60-day notice period, Freeman is willing to discuss effective remedies for the violations noticed in this letter. We suggest that Fibre Resources contact Freeman's attorneys at Brodsky & Smith within the next twenty (20) days so that these discussions may be completed by the conclusion of the 60-day notice period. Please note that we do not intend to delay the filing of a complaint in federal court, and service of the complaint shortly thereafter, even if discussions are continuing when the notice period ends.

**I.      THE LOCATION OF THE ALLEGED VIOLATIONS**

    **A.      The Facility**

Fibre Resources' Facility is located at 3833 Bancroft Drive, Spring Valley, CA 91977. At the Facility, Fibre Resources operates as a recycling and waste facility. At the Facility, the following industrial activities occur: (i) recycling of paper, plastic, metals, and other items; (ii) waste solution management; (iii) product destruction; (iv) equipment storage; and (v) shipping and receiving. Other activities carried out in the regular course of business at the facility include storage of fuel and other oils, maintenance, equipment storage, and waste storage. Repair and maintenance activities carried out at the facility include, but are not limited to, electrical, plumbing, roofing, asphalt, concrete, and utilities repairs as well as janitorial duties. Possible pollutants from the Facility include total suspended solids ("TSS"), waste oils, lubricants, fuel, trash, debris, hazardous materials, oil and grease ("O&G"), chemical oxygen demand ("COD"), pH, nitrogen, heavy metals such as aluminum, iron, lead, and zinc, as well as other pollutants. Stormwater from the Facility discharges, indirectly, into the Sweetwater River and the overall Sweetwater River Watershed.

    **B.      The Affected Water**

The Sweetwater River and the overall Sweetwater River Watershed are waters of the United States. The CWA requires that water bodies such as the Sweetwater River and the overall Sweetwater River Watershed meet water quality objectives that protect specific "beneficial uses." The beneficial uses of the

---

[1] Fibre Resources' Notice of Intent ("NOI") filed with the San Diego Regional Water Quality Control Board ("SDRWQCB") lists the receiving waters of the Facility as the "Sweetwater River" via indirect flow. Upon investigation, it is Freeman's knowledge and belief that the most immediate receiving water of the Facility is the Sweetwater River, via indirect flow, which thereafter ultimately flows downstream and reaches the San Diego Bay and Pacific Ocean.

[2] On April 1, 2014, the State Water Resources Control Board adopted an updated NPDES General Permit for Discharges Associated with Industrial Activity, Water Quality Order No. 2014-57-DWQ, which has taken force or effect on its effective date of July 1, 2015. As of the effective date, Water Quality Order No. 2014-57-DWQ has superseded and rescinded the prior Industrial Stormwater Permit except for purposes of enforcement actions brought pursuant to the prior permit.

Sweetwater River and the overall Sweetwater River Watershed include commercial and sport fishing, estuarine habitat, fish migration, navigation, preservation of rare and endangered species, water contact and non-contact recreation, shellfish harvesting, fish spawning, and wildlife habitat. Contaminated stormwater from the Facility adversely affects the water quality of the Sweetwater River and the overall Sweetwater River Watershed, and threatens the beneficial uses and ecosystem of these watersheds, which includes habitats for threatened and endangered species.

## II.   THE FACILITY'S VIOLATIONS OF THE CLEAN WATER ACT

It is unlawful to discharge pollutants to waters of the United States, such as the Sweetwater River and the overall Sweetwater River Watershed, without an NPDES permit or in violation of the terms and conditions of an NPDES permit. CWA § 301(a), 33 U.S.C. § 1311(a); *see also* CWA § 402(p), 33 U.S.C. § 1342(p) (requiring NPDES permit issuance for the discharge of stormwater associated with industrial activities). The Industrial Stormwater Permit authorizes certain discharges of stormwater, conditioned on compliance with its terms.

Fibre Resources has submitted a Notice of Intent ("NOI") to be authorized to discharge stormwater from the Facility under the Industrial Stormwater Permit since as early as 2013. However, information available to Freeman indicates that stormwater discharges from the Facility have violated several terms of the Industrial Stormwater Permit and the CWA. Apart from discharges that comply with the Industrial Stormwater Permit, the Facility lacks NPDES permit authorization for any other discharges of pollutants into waters of the United States.

### A.   Discharges in Excess of BAT/BCT Levels

The Effluent Limitations of the Industrial Stormwater Permit prohibit the discharge of pollutants from the facility in concentrations above the level commensurate with the application of best available technology economically achievable ("BAT") for toxic pollutants[3] and best conventional pollutant control technology ("BCT") for conventional pollutants.[4] Industrial Stormwater Permit § I(D)(32), II(D)(2); Previous Industrial Stormwater Permit, Order Part B(3). The EPA has published Benchmark values set at the maximum pollutant concentration present if an industrial facility is employing BAT and BCT, as listed in Attachment 1 to this letter.[5] These benchmark values are reiterated and incorporated into the Industrial Stormwater Permit. *See* Industrial Stormwater Permit § XI(B) Tables 1-2.

Additionally, the Previous Industrial Stormwater Permit notes that effluent limitation guidelines for several named industrial categories have been established and codified by the Federal Government. *See* Previous Industrial Stormwater Permit pp. VIII. The Previous Industrial Stormwater Permit mandates that for facilities that fall within such industrial categories, compliance with the listed BAT and BCT for the specified pollutants listed therein must be met in order to be in compliance with the Previous Industrial Stormwater Permit. *Id.* Fibre Resources falls within these named industrial categories and it must have complied with the effluent limitations found therein in order to have been in compliance with the Previous Industrial Stormwater Permit during its effective period. In addition, the Industrial Stormwater Permit requires dischargers to comply with Effluent Limitations "consistent with U.S. EPA's Multi Sector General Permit for Stormwater Discharges Associated with Industrial Activity (the "MSGP")". *See* Industrial Stormwater Permit § I(D)(33). The MSGP has specific numeric effluent limitations based upon Standard Industrial Classification ("SIC") codes. Furthermore, these SIC code based benchmark values are reiterated

---

[3] BAT is defined at 40 C.F.R. § 437.1 *et seq*. Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others.

[4] BCT is defined at 40 C.F.R. § 437.1 *et seq*. Conventional pollutants are listed at 40 C.F.R. § 401.16 and include BOD, TSS, oil and grease, pH, and fecal coliform.

[5] The Benchmark values are part of the EPA's Multi-Sector General Permit ("MSGP") and can be found at: https://www.epa.gov/npdes/final-2015-msgp-documents.

and incorporated into the Industrial Stormwater Permit. *See* Industrial Stormwater Permit § XI(B) Tables 1-2. Notably, Fibre Resources is classified as falling under SIC Code 5093, relating to Scrap and Waste Materials, requiring it to be within numerical effluent limitations for (i) pH; (ii) Oil and Grease; (iii) Total Suspended Solids; (iv) Iron; (v) Lead; (vi) Aluminum; (vii) Zinc; and (viii) Chemical Oxygen Demand. Based on Fibre Resources' self-reporting data and/or lack thereof, Fibre Resources has not met this requirement and was in violation of the IGP and/or Previous Stormwater Permit over a period of approximately at least the past five (5) years.

Fibre Resources' self-reporting of industrial stormwater discharges and/or lack thereof show a pattern of exceedances of Benchmark values and/or a failure to adequately monitor numerical pollutant discharge values in every instance of self-reporting. *See* Attachment 2. This pattern of a exceedances of benchmark values and/or a lack of self-reporting indicate that Fibre Resources has failed and is failing to employ measures that constitute BAT and BCT in violation of the requirements of the Industrial Stormwater Permit and Previous Industrial Stormwater Permit. Freeman alleges and notifies Fibre Resources that its stormwater discharges from the Facility have consistently contained and continue to contain levels of pollutants that exceed benchmark values for Zinc, Iron, Aluminum, and COD including annual and/or instantaneous NAL overages for such parameters within the last five (5) annual reporting periods.

Fibre Resources' ongoing discharges of stormwater containing levels of pollutants above EPA Benchmark values and BAT and BCT based levels of control also demonstrate that Fibre Resources has not developed and implemented sufficient Best Management Practices ("BMPs") at the Facility. Proper BMPs could include, but are not limited to, moving certain pollution-generating activities under cover or indoors capturing and effectively filtering or otherwise treating all stormwater prior to discharge, frequent sweeping to reduce build-up of pollutants on-site, installing filters on downspouts and storm drains, and other similar measures.

Fibre Resources' failure to develop and/or implement adequate pollution controls to meet BAT and BCT and the Facility violates and will continue to violate the CWA and the Industrial Stormwater Permit each and every day Fibre Resources discharges stormwater without meeting BAT/BCT. Freeman alleges that Fibre Resources has discharged stormwater containing excessive levels of pollutants from the Facility to the Sweetwater River and the overall Sweetwater River Watershed during at least every significant local rain event over 0.1 inches in at least the last five (5) years.[6] Attachment 3 compiles all dates in at least the last five (5) years when a significant rain event occurred. Fibre Resources is subject to civil penalties for each violation of the Industrial Stormwater Permit and the CWA within at least the past five (5) years.

### B.  Discharges Impairing Receiving Waters

The Industrial Stormwater Permit's Discharge Prohibitions disallow stormwater discharges that cause or threaten to cause pollution, contamination, or nuisance. *See* Industrial Stormwater Permit § III; Previous Industrial Stormwater Permit, Order Part A(2). The Industrial Stormwater Permit also prohibits stormwater discharges to surface or groundwater that adversely impact human health or the environment. *See* Industrial Stormwater Permit § VI(b)-(c); Previous Industrial Stormwater Permit, Order Part C(1). Receiving Water Limitations of the Industrial Stormwater Permit prohibit stormwater discharges that cause or contribute to an exceedance of applicable Water Quality Objectives ("WQOs") contained in a Statewide Water Quality Control Plan or the applicable Regional Water Board's Basin Plan. *See* Industrial Stormwater Permit § VI(a); Previous Industrial Stormwater Permit at Order Part C(2). Applicable WQOs are set forth in the California Toxic Rule ("CTR")[7] and Chapter 3 of the San Diego Region (Region 9) Water Quality Control

---

[6] Significant local rain events are reflected in the rain gauge data available at: http://www.ncdc.noaa.gov/cdo-web/search.

[7] The CTR is set forth at 40 C.F.R. § 131.38 and is explained in the Federal Register preamble accompanying the CTR promulgation set forth at 65 Fed. Reg. 31, 682 (May 18, 2000).

Plan (the "Basin Plan").[8]  Exceedances of WQOs are violations of the Industrial Stormwater Permit, the CTR, and the Basin Plan.

The Basin Plan establishes WQOs for all Inland Surface, Enclosed Bays and Estuaries, Coastal Lagoons and Ground waters of the SDRWQCB, including but not limited to the following:

- Waters shall not contain suspended or settleable material in concentrations that cause nuisance or adversely affect beneficial users.

- Waters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses.

- All waters shall be maintained free of toxic substances in concentrations that are toxic to, or that produce detrimental physiological responses in, human, plant, animal, or aquatic life.

Freeman alleges that Fibre Resources' stormwater discharges have caused or contributed to exceedances of Receiving Water Limitations in the Industrial Stormwater Permit and the WQOs set forth in the Basin Plan and CTR.  These allegations are based on Fibre Resources' self-reported data submitted to the San Diego Regional Water Quality Control Board.  These sampling results indicate that Fibre Resources' discharges are causing or threatening to cause pollution, contamination, and/or nuisance; adversely impacting human health or the environment; and violating applicable WQOs.

Freeman alleges that each day that Fibre Resources has discharged stormwater from the Facility, Fibre Resources' stormwater has and/or may have contained levels of pollutants that exceeded one or more of the Receiving Water Limitations and/or applicable WQOs in the Sweetwater River and the overall Sweetwater River Watershed.  Freeman alleges that Fibre Resources has discharged stormwater exceeding Receiving Water Limitations and/or WQOs from the Facility to the Sweetwater River and the overall Sweetwater River Watershed during at least every significant local rain event over 0.1 inches in the last five (5) years.  *See* Attachment 3.  Each discharge from the Facility that violates a Receiving Water Limitation or has caused or contributed, or caused or contributes, to an exceedance of an applicable WQOs constitutes a separate violation of the Industrial Stormwater Permit and the CWA.  Fibre Resources is subject to penalties for each violation of the Industrial Stormwater Permit and the CWA within at least the past five (5) years.

### C. Failure to Develop and Implement an Adequate Stormwater Pollution Prevention Plan

The Industrial Stormwater Permit requires dischargers to develop and implement an adequate Storm Water Pollution Prevention Plan ("SWPPP").  *See* Industrial Stormwater Permit, § X(B); Previous Industrial Stormwater Permit § A(1)(a).  The Industrial Stormwater Permit also requires dischargers to make all necessary revisions to existing SWPPPs promptly.  *See* Industrial Stormwater Permit, § X(B); Previous Industrial Stormwater Permit at Order Part E(2).

The SWPPP must include, among other requirements, the following: a site map, a list of significant materials handled and stored at the site, a description and assessment of all Fibre Resources' pollutant sources, a description of the BMPs that will reduce or prevent pollutants in stormwater discharges, specification of BMPs designed to reduce pollutant discharge to BAT and BCT levels, a comprehensive site compliance evaluation completed each reporting year, and revisions to the SWPPP within 90 days after a facility manager determines that the SWPPP is in violation of any requirements of the Industrial Stormwater Permit.  *See* Industrial Stormwater Permit, § X(A); Previous Industrial Stormwater Permit Section § A.

Based on information available to Freeman, Fibre Resources has failed to prepare and/or implement an adequate SWPPP and/or failed to revise the SWPPP to satisfy each of the requirements of § X(A) of the

---

[8] The Basin Plan is published by the San Diego Regional Water Quality Control Board at: https://www.waterboards.ca.gov/sandiego/water_issues/programs/basin_plan/.

Industrial Stormwater Permit and/or § A Previous Industrial Stormwater Permit. For Example, Fibre Resources' SWPPP does not include and/or Fibre Resources has not implemented adequate BMPs designed to reduce pollutant levels in discharges to BAT and BCT levels in accordance with Section A(8) of the Industrial Stormwater Permit, as evidenced by the data in Attachment 2. For example, Fibre Resources SWPPP is wholly insufficient and totals only nine pages in length, containing only broad and generalized BMPs. Moreover, theses broad and generalized BMPs have clearly failed to create and implement an adequate BMPs as reflected by the repeated NAL exceedances of the pollutant parameter of Zinc, Iron, Aluminum, and COD in the last five (5) reporting periods. Additionally, Fibre Resources' SWPPP does not include and/or Fibre Resources has not implemented an adequate Monitoring and Reporting Program, as evidenced by its lack of proper testing of requisite amount of Qualifying Storm Events every year for the past five (5) annual reporting periods, failure to test for all required parameters in each instance of testing, and/or a failure to properly submit Exceedance Response Reports.

Accordingly, Fibre Resources has violated the CWA each and every day that it has failed to develop and/or implement an adequate SWPPP meeting all of the requirements of § X(A) of the Industrial Stormwater Permit and/or § A Previous Industrial Stormwater Permit, and Fibre Resources will continue to be in violation every day until it develops and implements an adequate SWPPP. Fibre Resources is subject to penalties for each violation of the Industrial Stormwater Permit and the CWA occurring within at least the past five (5) years.

        **D.**        **Failure to Develop and Implement an Adequate Monitoring and Reporting Program and to Perform Annual Comprehensive Site Compliance Evaluations**

The Industrial Stormwater Permit requires facility operators to develop and implement a Monitoring and Reporting Program ("MRP"). *See* Industrial Stormwater Permit, § XI; Previous Industrial Stormwater Permit § B(1) and Order Part E(3). The Industrial Stormwater Permit requires that MRP ensure that each the facility's stormwater discharges comply with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the Industrial Stormwater Permit. *Id*. Facility operators must ensure that their MRP practices reduce or prevent pollutants in stormwater and authorized non-stormwater discharges as well as evaluate and revise their practices to meet changing conditions at the facility. *Id.* This may include revising the SWPPP as required by § X(A) of the Industrial Stormwater Permit and/or §A Previous Industrial Stormwater Permit.

The MRP must measure the effectiveness of BMPs used to prevent or reduce pollutants in stormwater and authorized non-stormwater discharges, and facility operators must revise the MRP whenever appropriate. *See* Industrial Stormwater Permit, § XI; Previous Industrial Stormwater Permit § at Section B. The Industrial Stormwater Permit requires facility operators to visually observe and collect samples of stormwater discharges from all drainage areas. *Id.* Facility operators are also required to provide an explanation of monitoring methods describing how the facility's monitoring program will satisfy these objectives. *Id.*

Fibre Resources has been operating the Facility with an inadequately developed and/or inadequately implemented MRP, in violation of the substantive and procedural requirements set forth in Section B of the Industrial Stormwater permit. For example, the data in Attachment 2 indicates that Fibre Resources monitoring program has not ensured that stormwater dischargers are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations of the Industrial Stormwater Permit as required by the Industrial Stormwater Permit, § XI and/or the Previous Industrial Stormwater Permit § B. The monitoring has not resulted in practices at the Facility that adequately reduce or prevent pollutants in stormwater as required by Industrial Stormwater Permit, § XI and/or the Previous Industrial Stormwater Permit § B. Additionally, the Industrial Stormwater Permit requires dischargers to comply with Effluent Limitations "consistent with U.S. EPA's Multi Sector General Permit for Stormwater Discharges Associated with Industrial Activity (the "MSGP")". The MSGP has specific numeric effluent limitations based upon Standard Industrial Classification ("SIC") codes. Furthermore, these SIC code based benchmark values are reiterated and incorporated into the Industrial Stormwater Permit. *See* Industrial Stormwater Permit § XI(B) Tables 1-2. Notably, Fibre Resources is classified as falling under SIC Code 5093, relating to Scrap and Waste Materials, requiring it to be within numerical effluent limitations for (i) pH; (ii) Oil and Grease; (iii)

Total Suspended Solids; (iv) Iron; (v) Lead; (vi) Aluminum; (vii) Zinc; and (viii) Chemical Oxygen Demand. As previously stated, and in clear violation of the terms of the Industrial Stormwater Permit, Fibre Resources has consistently reported benchmark exceedances and/or failed to report testing results for any applicable effluent limitation in their annual reports for the past five (5) annual reporting periods. *See* Attachments 2, 3. Therefore, the data in Attachment 2 indicates that Fibre Resources' monitoring program has not effectively identified or responded to compliance problems at the Facility or resulted in effective revision of the BMPs in use or the Facility's SWPPP to address such ongoing problems as required by Industrial Stormwater Permit, § XI and/or the Previous Industrial Stormwater Permit § B.

As a part of the MRP, the Industrial Stormwater Permit specifies that Facility operators shall collect a total of four (4) stormwater samples throughout an annual reporting period. Specifically the Industrial Stormwater Permit requires, "The discharger to collect and analyze samples from two (2) Qualifying Storm Events ("QSEs") within the first half of each reporting year (July 1 to December 31), and two (2) QSEs within the second half of each reporting year (January 1 to June 30)." Industrial Stormwater Permit § XI B(2).[9] Furthermore, should facility operators fail to collect samples from the first storm event of the wet season, they are still required to collect samples from two other storm events during the wet season, and explain in the annual report why the first storm event was not sampled. *Id.* Despite these requirements Fibre Resources has failed to submit testing data for a second, third, or fourth QSE for the 2015-2016 annual reporting period, has failed to submit testing data for a third or fourth QSE in the 2017-2018 annual reporting period, and has failed to submit any testing data whatsoever for the 2014-2015, 2018-2019, or current 2019-2020 annual reporting period. To put simply, for the past five annual reporting periods, which should have mandated data from at least twenty tested QSEs, Fibre Resources has supplied testing data for only seven. Fibre Resources has not submitted adequate explanations for such missing data. Moreover, certain submitted testing indicate that not all required pollutant parameters were tested for in every QSE, notably the testing result for the QSE submitted in the 2015-2016 annual reporting period indicates that only two of the eight required pollutant parameters were tested for.

The Industrial Stormwater Permit also requires dischargers to include laboratory reports with their Annual Reports submitted to the Regional Board. *See* Industrial Stormwater Permit, Fact Sheet § O and/or Previous Industrial Stormwater Permit § B(14). Again, Fibre Resources has failed to submit laboratory reports with relevant testing data for a second, third, or fourth QSE for the 2015-2016 annual reporting period, has failed to submit laboratory reports with relevant testing data for a third or fourth QSE in the 2017-2018 annual reporting period, and has failed to submit any laboratory reports with relevant testing data whatsoever for the 2014-2015, 2018-2019, or current 2019-2020 annual reporting period. Fibre Resources has not submitted adequate explanations for such missing data.

As a result of Fibre Resources' failure to adequately develop and/or implement an adequate MRP at the Facility, Fibre Resources has been in daily and continuous violation of the Industrial Stormwater Permit and the CWA each and every day for at least the past five (5) years. These violations are ongoing. Fibre Resources will continue to be in violation of the monitoring and reporting requirement each day that Fibre Resources fails to adequately develop and/or implement an effective MRP at the Facility. Fibre Resources is subject to penalties for each violation of the Industrial Stormwater Permit and the CWA occurring for at least the last five (5) years.

### E.     Failure to Comply with Level 1 and Level 2 Exceedance Response Action Requirements

When the Industrial Stormwater Permit became effective on July 1, 2015, all permitted facilities were placed into "baseline status" for all parameters listed in Table 2 of the Industrial Stormwater Permit. Industrial Stormwater Permit § XII(B). Permitted facilities are placed into "Level 1 Status" if sampling indicates that an annual or instantaneous NAL exceedance for an applicable pollutant parameter has occurred. Industrial Stormwater Permit § XII(C). Level 1 status commences on July 1 following the reporting year

---

[9] Under the Previous Industrial Stormwater Permit, only two samplings per year was required, specifically, from "the first hour of discharge from (1) the first storm event of the wet season, and (2) at least one other storm event in the wet season." *See* Previous Industrial Stormwater Permit § B(5)(a).

during which the NAL exceedance(s) occurred, and the discharger enters the Exceedance Response Action ("ERA") process. *Id*. The ERA process requires the discharger to conduct an evaluation, assisted by a Qualified Industrial Storm Water Practitioner (a "QISP"), of the industrial pollutant sources at the facility that are or may be related to the NAL exceedance(s) by October 1 following the commencement of Level 1 Status. *Id*. The evaluation must also include the identification of the "corresponding BMPs in the SWPPP and any additional BMPs and SWPPP revisions necessary to prevent future NAL exceedances and to comply with the requirements of the General Permit." *Id*. Furthermore, the Industrial Stormwater Permit states, "Although the evaluation may focus on the drainage areas where the NAL exceedance(s) occurred, all drainage areas shall be evaluated." *Id*. If such remediation is not effective, and NAL exceedances for the affected pollutant parameter occurs for a second consecutive annual reporting period, the Facility is placed into "Level 2" status, requiring further remediation, analysis, reporting, and action. *Id.*

Based upon Level 1 and Level 2 status evaluations, a discharger is required, as soon as practicable but no later than January 1 following the commencement of Level 1 or Level 2 status, to prepare a Level 1 ERA Report or Level 2 ERA Action Plan, as applicable. Industrial Stormwater Permit § XII(C)(2). The Level 1 ERA Report and/or Level 2 ERA Action Plan must be prepared by a QSIP and include a summary of the Level 1 and/or Level 2 ERA evaluation(s) and a detailed description of the SWPPP revisions and any additional BMPs for each parameter that exceeded an NAL. *Id*. The SWPPP revisions and additional BMP development and implementation must also be completed by January 1 following the commencement of Level 1 and/or Level 2 status, and the Level 1 or Level 2 status discharger is required to submit via SMARTS the Level 1 ERA Report or Level 2 ERA Action Plan certifying the evaluation has been conducted, and SWPPP revisions and BMP implementation have been completed. *Id*. The certification is also required to provide the QISP's identification number, name, and contact information no later than January 1 following commencement of level 1 status. *Id*.

A permitted discharger's Level 1 status for a parameter will return to Baseline status if a Level 1 ERA Report or Level 2 ERA Action Plan has been completed, all identified additional BMPs have been implemented, and results from four (4) consecutive QSEs that were sampled subsequent to BMP implementation indicate no additional NAL exceedances for that parameter. Industrial Stormwater Permit § XII(C)(2)(b). A permitted discharger will enter "Level 2 status" if there are any NAL exceedances for the same parameter when the discharger is in Level 1 status. Industrial Stormwater Permit § XII(D). Upon entry into Level 2 status, a discharger shall submit a Level 2 ERA Action Plan by January 1 following the reporting year during which NAL exceedance(s) occurred placing the discharger into Level 2 Status. *Id*. Additionally, a permitted discharger in Level 2 Status is required to submit a Level 2 ERA Technical Report on January 1 of the reporting year following the submittal of the Level 2 ERA Action Plan, which shall include, amongst other things a summary and report of the implemented BMPs implemented and their effect on pollution reduction. *Id.*

Fibre Resources' Facility had NAL annual average exceedances for Iron, Aluminum and COD during the 2016-2017 Annual Reporting period that resulted in Level 1 status for those pollutant parameter at the Facility. Notably, following these NAL annual overages, Fibre Resources did not properly submit a Level 1 ERA Report which would have been due to be completed and filed by January 1, 2018.[10] In sum, rather than conducting a thorough evaluation to identify the BMPs in the SWPPP that correspond to the NAL exceedances at the Facility, and identify what additional BMPs are needed to prevent future NAL exceedances, Fibre Resources failed to submit a timely Level 1 ERA Report (the submittal of which is still outstanding) and did not comply with the Industrial Stormwater Permit and has led to further NAL overages.

Additionally, Fibre Resources' Facility had NAL annual average exceedances for Zinc and COD during the 2017-2018 Annual Reporting period that resulted in Level 1 status for the pollutant parameter of Zinc and Level 2 status for the pollutant parameter of COD at the Facility. Notably, following this NAL overage, Fibre Resources did not properly submit either a Level 1 ERA Report or a Level 2 ERA Action Plan

---

[10] A Level 1 ERA Action Plan must be Submitted by "January 1 following commencement of Level 1 Status for any parameter with sampling results indicating an NAL Exceedance" *See*, IGP §XII(C)(2)(a).

8

which both would be due to be completed and filed by January 1, 2019.[11] In sum, rather than conducting a thorough evaluation to identify the BMPs in the SWPPP that correspond to the NAL exceedances at the Facility, and identify what additional BMPs are needed to prevent future NAL exceedances, Fibre Resources again failed to submit (and continues to fail to submit) proper ERA documentation, and did not comply with the Industrial Stormwater Permit will likely lead to further NAL overages.

In addition, Fibre Resources did not properly submit a Level 2 ERA Technical Report for the pollutant parameter of COD which would have been due to be completed and filed by January 1, 2020.[12]

In fact Fibre Resources has failed to submit any documentation whatsoever required of it under the ERA scheme of the Industrial Stormwater Permit. Such a flagrant violation of the of the Industrial Stormwater Permit's ERA programs completely undercuts its purpose of creating remedial efforts, implementing such efforts, and then later analyzing those remedial efforts efficacy.

As a result of Fibre Resources' failure to adequately develop, implement, and/or submit adequate Level 1 ERA Report, Level 2 ERA Action Plans, and/or Level 2 ERA Technical Reports at the Facility, Fibre Resources has been in daily and continuous violation of the Industrial Stormwater Permit and the CWA each and every day since July 1, 2015, continuing a pattern of violations stretching back at least five (5) years. These violations are ongoing. Fibre Resources will continue to be in violation of the monitoring and reporting requirement each day that Fibre Resources fails to adequately develop and/or implement an effective Level 1 ERA Report, Level 2 ERA Action Plans, and/or Level 2 ERA Technical Report at the Facility. Fibre Resources is subject to penalties for each violation of the Industrial Stormwater Permit and the CWA occurring for the last five (5) years.

      **F.**      **Unpermitted Discharges**

Section 301(a) of the CWA prohibits the discharge of any pollutant into waters of the United States unless the discharge is authorized by a NPDES Permit issued pursuant to Section 402 of the CWA. *See* 33 U.S.C. §§ 1311(a), 1342. Fibre Resources sought coverage for the Facility under the Industrial Stormwater Permit, which states that any discharge from an industrial facility not in compliance with the Industrial Stormwater Permit "must be either eliminated or permitted by a separate NPDES permit." Industrial Stormwater Permit, § III; Previous Industrial Stormwater Permit, Order Part A(1). Because Fibre Resources has not obtained coverage under a separate NPDES permit and has failed to eliminate discharges not permitted by the Industrial Stormwater Permit, each and every discharge from the Facility described herein not in compliance with the Industrial Stormwater Permit has constituted and will continue to constitute a discharge without CWA Permit coverage in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a)

**IV.**      **PERSON RESPONSIBLE FOR THE VIOLATIONS**

Fibre Resources Unlimited, Inc. a/k/a Fibre Resources and Certified Recycling, Inc. are the person(s) responsible of the violations at the Facility described above.

**V.**      **NAME AND ADDRESS OF NOTICING PARTY**

   Clayton Stephen Freeman
   831 E Ave.
   Coronado, CA 92118
   (310) 666-6814

---

[11] A Level 2 ERA Action Plan must be Submitted by "January 1 following commencement of Level 2 Status for any parameter with sampling results indicating an NAL Exceedance" *See*, IGP §XII(D)(1)(a).

[12] A Level 2 ERA Technical Report must be Submitted by "January 1 following the submittal of the Level 2 ERA Action Plan." *See*, IGP §XII(D)(2)

VI. **COUNSEL**

Evan J. Smith, Esquire
esmith@brodskysmith.com
Ryan P. Cardona, Esquire
rcardona@brodskysmith.com
Brodsky & Smith, LLC
9595 Wilshire Blvd., Suite 900
Beverly Hills, CA 90212
T: (877) 534-2590
F: (310) 247-0160

VII. **REMEDIES**

Freeman intends, at the close of the 60-day notice period or thereafter, to file a citizen suit under CWA section 505(a) against Fibre Resources for the above-referenced violations. Freeman will seek declaratory and injunctive relief to prevent further CWA violations pursuant to CWA sections 505(a) and (d), 33 U.S.C. § 1365(a) and (d), and such other relief as permitted by law. In addition, Freeman will seek civil penalties pursuant to CWA section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, against Fibre Resources in this action. The CWA imposes civil penalty liability of up to $51,570 per day per violation for violations occurring after November 2, 2015, and $37,500 per day per violation for violations occurring after January 12, 2009 but before November 2, 2015. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4. Freeman will seek to recover attorneys' fees, experts' fees, and costs in accordance with CWA section 505(d), 33 U.S.C. § 1365(d).

As noted above, Freeman and his Counsel are willing to meet with you during the 60-day notice period to discuss effective remedies for the violations noted in this letter. Please contact me to initiate these discussions.

Sincerely,

Evan J. Smith, Esquire
esmith@brodskysmith.com
Ryan P. Cardona, Esq.
rcardona@brodskysmith.com
Brodsky & Smith, LLC
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA
T: (877) 534-2590
F: (310) 247-0160

10

**ATTACHMENT 1: EPA BENCHMARKS AND WATER QUALITY STANDARDS FOR DISCHARGES TO WATER**

**EPA Benchmarks, Multi-Sector General Permit ("MSGP"), & IGP**

| Parameter | Units | Benchmark Value | Source |
|---|---|---|---|
| pH | pH Units | Less than 6.0 Greater than 9.0 (Instantaneous) | MSGP; Industrial Stormwater Permit § XI(B) Tables 1-2 |
| Oil & Grease | Mg/L | 25 (Instantaneous) 15 (Annual) | MSGP; Industrial Stormwater Permit § XI(B) Tables 1-2 |
| Total Suspended Solids | Mg/L | 400 (Instantaneous) 100 (Annual) | MSGP; Industrial Stormwater Permit § XI(B) Tables 1-2 |
| Iron | Mg/L | 1.0 (Annual) | MSGP; Industrial Stormwater Permit § XI(B) Tables 1-2 |
| Lead | Mg/L | 0.262** (Annual) | MSGP; Industrial Stormwater Permit § XI(B) Tables 1-2 |
| Aluminum | Mg/L | 0.75 (Annual) | MSGP; Industrial Stormwater Permit § XI(B) Tables 1-2 |
| Zinc | Mg/L | 0.26** (Annual) | MSGP; Industrial Stormwater Permit § XI(B) Tables 1-2 |
| Total Suspended Solids | Mg/L | 120 (Annual) | MSGP; Industrial Stormwater Permit § XI(B) Tables 1-2 |

\*\*   The NAL is the highest value used by the U.S. EPA based on their water hardness.

**ATTACHMENT 2: TABLE OF EXCEEDENCES FOR
FIBRE RESOURCES**

The following table contains each stormwater sampling result which exceeds EPA Benchmarks and/or causes or contributes to an exceedance of CFR and/or Basin Plan Water Quality Standards. All EPA Benchmarks and CFR and/or Basin Plan Water Quality Standards are listed in Attachment 1. All stormwater samples were reported by the Facility during the past five (5) years.

| Reporting Period | Sample Date | Parameter | Result | Unit |
|---|---|---|---|---|
| 2019-2020 | NO QSE TESTING DATA SUBMITTED | | | |
| 2018-2019 | NO QSE TESTING DATA SUBMITTED | | | |
| 2017-2018 | 05/02/2018 | Iron | 1.57 | Mg/L |
| 2017-2018 | 05/02/2018 | Aluminum | 1.5 | Mg/L |
| 2017-2018 | 05/02/2018 | Zinc | 0.577 | Mg/L |
| 2017-2018 | 05/02/2018 | COD | 184 | Mg/L |
| 2017-2018 | 05/02/2018 | Zinc | 0.458 | Mg/L |
| 2017-2018 | 05/02/2018 | COD | 141 | Mg/L |
| 2017-2018 | 05/02/2018 | Iron | 1.05 | Mg/L |
| 2017-2018 | 01/09/2018 | Iron | 1.04 | Mg/L |
| 2017-2018 | 01/09/2018 | Aluminum | 0.98 | Mg/L |
| 2017-2018 | 01/09/2018 | Zinc | 0.303 | Mg/L |
| 2016-2017 | 2/27/2017 | Iron | 1.35 | Mg/L |
| 2016-2017 | 2/27/2017 | Aluminum | 0.88 | Mg/L |
| 2016-2017 | 2/27/2017 | COD | 182 | Mg/L |
| 2016-2017 | 2/27/2017 | Iron | 2.19 | Mg/L |
| 2016-2017 | 2/27/2017 | Aluminum | 1.47 | Mg/L |
| 2016-2017 | 2/27/2017 | COD | 230 | Mg/L |
| 2016-2017 | 1/24/2017 | TSS | 399 | Mg/L |
| 2016-2017 | 1/24/2017 | Iron | 5.83 | Mg/L |
| 2016-2017 | 1/24/2017 | Aluminum | 3.04 | Mg/L |
| 2016-2017 | 1/24/2017 | Zinc | 0.251 | Mg/L |
| 2016-2017 | 1/24/2017 | COD | 482 | Mg/L |
| 2016-2017 | 1/24/2017 | Iron | 2.86 | Mg/L |
| 2016-2017 | 1/24/2017 | Aluminum | 2.45 | Mg/L |
| 2016-2017 | 12/22/2016 | TSS | 179 | Mg/L |
| 2016-2017 | 12/22/2016 | Iron | 9.12 | Mg/L |
| 2016-2017 | 12/22/2016 | Aluminum | 7.13 | Mg/L |
| 2016-2017 | 12/22/2016 | Zinc | 0.349 | Mg/L |
| 2016-2017 | 12/22/2016 | COD | 311 | Mg/L |
| 2016-2017 | 12/22/2016 | TSS | 194 | Mg/L |
| 2016-2017 | 12/22/2016 | Iron | 2.58 | Mg/L |
| 2016-2017 | 12/22/2016 | Aluminum | 1.56 | Mg/L |
| 2016-2017 | 12/16/2016 | Iron | 8.41 | Mg/L |
| 2016-2017 | 12/16/2016 | Aluminum | 4.73 | Mg/L |
| 2016-2017 | 12/16/2016 | Zinc | 0.267 | Mg/L |
| 2016-2017 | 12/16/2016 | COD | 252 | Mg/L |
| 2016-2017 | 12/16/2016 | Iron | 2.29 | Mg/L |
| 2016-2017 | 12/16/2016 | Aluminum | 1.6 | Mg/L |
| 2014-2015 | NO QSE TESTING DATA SUBMITTED | | | |

\* Fibre Resources has failed to submit testing results or laboratory reports for all required NALs the requisite four (4) QSEs for the annual reporting periods of 2019-2020, 2018-209, 2017-2018, 2015-2016, and 2014-2015..

\* Fibre Resources has recorded annual average NAL exceedances for Iron, Aluminum, and COD in the 2016-2017 annual reporting period, and for Zinc and COD in the 2017-2018 annual reporting period.

\* As indicated above, Fibre Resources has failed to properly comply with the Level 1 and Level 2 ERA requirements to properly address the above listed overages and testing failures.

**ATTACHMENT 3: ALLEGED DATES OF EXCEEDANCES BY
FIBRE RESOURCES
January 1, 2015 – March 10, 2020**

Days with precipitation two-tenths of an inch or greater, as reported by NOAA's National Climatic Data Center, Stations: (i) La Mesa, 2.6 E, CA US1CASD0090 and (ii) La Mesa 1.2 E, CA US1CASD0164 when a stormwater discharge from the Facility is likely to have occurred.  http://www.ncdc.noaa.gov/cdo-web/search

| 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|
| 1/1 | 1/4 | 1/1 | 1/9 | 1/1 | 1/17 |
| 1/11 | 1/5 | 1/6 | 1/10 | 1/6 | 1/21 |
| 1/12 | 1/6 | 1/13 | 2/23 | 1/12 | 2/10 |
| 2/23 | 1/7 | 1/19 | 2/27 | 1/15 | 2/23 |
| 3/1 | 1/8 | 1/20 | 2/28 | 1/16 | 3/2 |
| 3/2 | 2/1 | 1/21 | ¾ | 1/18 | 3/10 |
| 3/3 | 3/6 | 1/23 | 3/11 | 1/21 | |
| 5/8 | 3/7 | 1/24 | 3/15 | 2/1 | |
| 5/9 | 3/8 | 1/25 | 3/18 | 2/3 | |
| 5/15 | 3/12 | 2/7 | 4/20 | 2/5 | |
| 5/16 | 4/8 | 2/8 | 10/5 | 2/6 | |
| 5/23 | 4/10 | 2/18 | 10/13 | 2/14 | |
| 7/19 | 5/6 | 2/19 | 1/22 | 2/15 | |
| 7/20 | 5/7 | 2/27 | 1/29 | 2/16 | |
| 9/16 | 9/21 | 2/28 | 11/30 | 2/18 | |
| 10/5 | 10/25 | 5/7 | 12/6 | 2/21 | |
| 10/6 | 11/21 | 5/8 | 12/7 | 2/22 | |
| 11/4 | 11/22 | 9/4 | 12/25 | 3/2 | |
| 11/25 | 11/27 | 12/21 | 12/26 | 3/3 | |
| 11/27 | 11/28 | | | 3/7 | |
| 12/12 | 11/29 | | | 3/12 | |
| 12/14 | 12/16 | | | 3/21 | |
| 12/20 | 112/17 | | | 3/22 | |
| 12/23 | 12/22 | | | 5/1 | |
| 12/29 | 12/23 | | | 5/7 | |
| | 12/24 | | | 5/12 | |
| | 12/25 | | | 5/17 | |
| | 12/31 | | | 5/20 | |
| | | | | 5/23 | |
| | | | | 5/27 | |
| | | | | 11/20 | |
| | | | | 11/22 | |
| | | | | 11/28 | |
| | | | | 11/29 | |
| | | | | 11/30 | |
| | | | | 12/4 | |
| | | | | 12/5 | |
| | | | | 12/8 | |
| | | | | 12/24 | |

14

|  |  |  |  | 12/25 |  |
|--|--|--|--|-------|--|
|  |  |  |  | 12/26 |  |